CLERK'S COPY

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

FILED
U.S. DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

JUL 12 1999

~~illegible~~
CLERK

DORIS PHILLIPS, as personal
representative of the estate of
RICHARD L. NICOLDS, Deceased,

        Plaintiff,

        vs.                     CIV No. 97-1324 JP/LFG

THE CITY OF ALBUQUERQUE,
ALBUQUERQUE POLICE DEPARTMENT,
CHIEF OF POLICE JOE POLISAR, individually
and in his official capacity, JOHN BODE,
individually and in his official capacity, GREG ROBERTSON,
individually and in his official capacity,
DUFFY RYAN, individually and in his official capacity,

        Defendants.

## MEMORANDUM OPINION AND ORDER

At an April 12, 1999, pretrial conference and motion hearing, Randi McGinn, Esq.,

Robert Doughty, Esq., and Dan O'Brien, Esq. represented the Plaintiff; Luis Robles, Esq., Robert

Beckett, Esq., Steve French, Esq., and Norman Cairns, Esq. represented Defendants.

Counsel argued three pending motions: Defendants' "Motion for Partial Summary

Judgment No. III: Battery, Assault, Trespass, False Arrest, False Imprisonment, Excessive Force,

and Illegal Search and Seizure Claims," (Doc. No. 105), filed September 9, 1998; Defendants'

"Motion for Partial Summary Judgment No. IV: Dismissal of Deliberate Indifference to Known

Medical Need and John Doe Claims," (Doc. No. 115), filed on October 7, 1998; and Defendants'

"Motion for Partial Summary Judgment No. V: Dismissal of the Excessive Force Claim Against

Officer Bode on the Basis of Qualified Immunity," (Doc. No. 171), filed on February 8, 1999.

214

During the hearing I ruled on Defendants' third and fourth motions for partial summary judgment. I reserved ruling on Defendants' fifth motion for summary judgment, which is not addressed in this memorandum opinion and order.

## I.  BACKGROUND

On September 16, 1995, the Albuquerque Police Department ("APD") received at least one report that a red vehicle had been involved in a minor, one-car accident. Officers Bode and Robertson responded to a police radio dispatch of the incident, which directed the officers to the 2200 block of Garfield, S.E. Meanwhile, another officer had obtained registration information for the red vehicle indicating that it was owned by Mr. Nicolds of 2216 Garfield, S.E. Apparently, the officer relayed this information to Officers Robertson and Bode, who then went to the residence at 2216 Garfield, the front of which is close to and faces the street.

Officer Robertson and Officer Bode spoke with David Johnson, who lived at 2216 Garfield. Mr. Johnson informed the officers that Mr. Nicolds actually resided at 2214 Garfield, which was not a street-front residence but was located directly behind the backyard of 2216 Garfield. Mr. Nicolds' house could be accessed in two ways: 1.) by walking on a sidewalk alongside 2216 Garfield and through a gate at the rear of Mr. Johnson's house, across Mr. Johnson's backyard, and then through another gate that led into a small yard in front of Mr. Nicolds' house; or 2.) by walking or driving along a dirt alleyway to the west of 2216 Garfield and passing through a closed gate at the rear of Mr. Nicolds' property.

At the hearing, the parties elaborated on the relative positions of the residences. Defendants also submitted a diagram of the area, a copy of which is attached to this memorandum opinion and order as Exhibit 1. The diagram shows that Garfield runs east-west.

2

Mr. Johnson's residence, 2216 Garfield, is on the south side of the street. Directly to the south of 2216 is Mr. Nicolds' residence, 2214 Garfield.

A dirt alleyway, that enters Garfield west of 2216, runs perpendicularly a short distance to the south of Garfield and then turns to the east, running parallel to Garfield. Mr. Nicolds' residence, 2214 Garfield, was on the north side of the dirt alleyway. Between Mr. Nicolds' residence and the dirt alleyway was a closed gate.

Mr. Nicolds' house had two entryways. One was located on the west side under a carport near the northwest corner of the house. Another entryway was near the northeast corner of the house, facing north toward the back of Mr. Johnson's 2216 residence. On the diagram there appears to be a small porch in front of the north side entry and a path leading from the southeastern corner of Mr. Johnson's property to the porch. (Ex. 1.)

Although it is not clearly depicted in the diagram, there is a concrete sidewalk on the west side of Mr. Johnson's house that extends from Garfield street in a southerly direction through two gates to Mr. Nicolds' residence. (Tr. at 14, 15.) Officer Bode and Officer Robertson received Mr. Johnson's permission to access 2214 Garfield by using the sidewalk on the west side of Mr. Johnson's house. Mr. Johnson showed the officers through the gate leading into Mr. Johnson's backyard and then through the gate leading into Mr. Nicolds' lot.

Officer Bode approached the entryway that was under the carport near the northwestern corner of the Mr. Nicolds' home. The entry had a screen door that was closed and a solid interior door that was standing open. The parties dispute what happened next.

Defendants' version is that Officer Bode identified himself as an APD officer before Mr. Nicolds approached the screen door and pointed a gun at Officer Bode. Officer Bode said, "oh,

gun," drew his weapon, and shot at Mr. Nicolds several times through the screen door. After Mr. Nicolds fell to the floor, Officer Bode shot him again through the screen door because Mr. Nicolds appeared to be reaching for his weapon. Before Officer Bode had encountered Mr. Nicolds, Officer Robertson had walked along the western side of the house under the carport past the west side entryway and away from Officer Bode. At the time of the shooting, Officer Robertson was standing at the southwestern corner of Mr. Nicolds' residence. A third officer, Officer Ryan, had arrived on the scene but was in his police car on Garfield when the shooting occurred. After Officer Bode fired the shots, the three officers gathered under the carport outside the screen door before entering the residence. The officers offer conflicting stories of what happened next, but they all agree that someone picked up the gun that was lying by Mr. Nicolds' body. Officer Bode also checked for Mr. Nicolds' pulse, but found none. The officers conducted a protective sweep of the home because they feared others might be in the house.

Plaintiff claims that Officer Bode did not identify himself as an APD officer before shooting Mr. Nicolds. Plaintiff denies that Mr. Nicolds had a gun in his hand but suggests that Mr. Nicolds may have had a set of keys in one hand when he was shot. Officers Bode, Robertson, and Ryan ("Defendant Officers") entered Mr. Nicolds' residence with their guns drawn. No officer rendered first aid to Mr. Nicolds, who was still alive. Realizing that Mr. Nicolds was unarmed, the officers performed an illegal protective sweep of the premises with the intention of finding and putting a gun by Mr. Nicolds' body. Having found an antique collector's gun in Mr. Nicolds' bedroom, they planted it by Mr. Nicolds' body.

Although medical assistance arrived at the scene five to six minutes after the shooting, Mr. Nicolds died.

4

On November 10, 1997, Plaintiff filed an "Amended Complaint for Wrongful Death, Aggravated Battery, Battery, Aggravated Assault, Assault, Trespass, False Arrest, False Imprisonment, Negligent Supervision, Negligent Training, Spoliation of Evidence, and Fourth and Fourteenth Amendment Civil Rights Violations."[1] Subsequently, Defendants filed the three motions for partial summary judgment which were argued during the April 12, 1999, hearing.

## II. LEGAL STANDARD

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "When applying this standard, we examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." *Applied Genetics Int'l., Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Only then does the burden shift to the non-movant to come forward with evidence showing that there is a genuine issue of material fact. *See Bacchus Indus. Inc. v. Arvin Indus. Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). The non-moving party may not avoid summary judgment by resting upon the mere allegations or denials of his or her pleadings. *Id.*

---

[1] On June 11, 1998, I entered a Memorandum Opinion and Order (Doc. No. 54) dismissing with prejudice parts of Plaintiff's Amended Complaint: Count II ("Common Law Spoliation of Evidence"); the portion of Count III asserting a Fourth Amendment § 1983 claim based on spoliation of evidence; the portions of Count III alleging deprivation of due process based on gross negligence; the portions of Count III asserting substantive and procedural due process claims; and Count V ("Punitive Damages"), with the exception of the § 1983 claim asserted against the Defendant Officers in their individual capacities.

## III. DISCUSSION

### A. Defendants' "Motion for Partial Summary Judgment No. III: Battery, Assault, Trespass, False Arrest, False Imprisonment, Excessive Force, and Illegal Search and Seizure Claims."

In Count I of Plaintiff's Amended Complaint, Plaintiff alleged that Defendant Officers Robertson and Ryan are liable for assault, aggravated assault, battery, aggravated battery, trespass, false arrest and false imprisonment under the New Mexico Tort Claims Act, N.M. STAT. ANN. § 41-4-1 *et seq.* In Count III, Plaintiff alleged that Defendant Officers Robertson and Ryan violated Mr. Nicolds' Fourth Amendment right to be free from an illegal search and seizure and the use of excessive force.

#### 1. State Law Claims

##### a. Battery and Aggravated Battery

Plaintiff alleged that all of the Defendant Officers committed battery and aggravated battery against Mr. Nicolds by shooting him without cause or justification. The uncontraverted evidence in the record is that neither Officer Robertson nor Officer Ryan shot or touched Mr. Nicolds. Plaintiff's counsel conceded this at the hearing. (Tr. at 3.) Consequently, I ruled that the Plaintiff's battery and aggravated battery claims against Defendant Officers Robertson and Ryan should be dismissed.[2]

---

[2] At the hearing, I did not rule on Plaintiff's state law battery and aggravated battery claims against Defendant Officer Bode.

b.     Assault and Aggravated Assault

In her Amended Complaint, Plaintiff also alleged that Defendant Officers Robertson and

Ryan committed assault and aggravated assault against Mr. Nicolds when they aimed their

weapons at him as he lay dying on the floor.  At the hearing Plaintiff's counsel asked the court to

dismiss these claims, (Tr. at 35); therefore, I granted Defendants' motion for partial summary

judgment on the assault and aggravated assault claims against Defendant Officers Robertson and

Ryan.[3]

c.     Trespass

At the hearing, Plaintiff argued that Defendant Officers Robertson and Ryan committed

trespass when they crossed through the gate between Mr. Johnson's backyard and Mr. Nicolds'

lot.  (Tr. at 7.)  In Plaintiff's Response, she also argues that the officers committed trespass when

they entered Mr. Nicolds' home following the shooting.  Defendants assert that they were

lawfully investigating Mr. Nicolds' "hit-and-run" accident when they walked onto his property

and cite N.M. STAT. ANN. § 29-1-1 (Michie 1997) (officers have duty to investigate all violations

of state criminal laws that are called to their attention) and *Romero v. Sanchez*, 119 N.M. 690,

693, 895 P.2d 212, 215 (1995) (holding that defendant officer did not commit criminal trespass

when he entered plaintiff's mobile home after reporting to a call of a private dispute because the

officer had a duty to investigate and preserve the peace).

Plaintiff denies that the officers were acting under color of statutory authority and

attempts to distinguish *Romero* on the ground that there was no private dispute at Mr. Nicolds'

---

[3] This ruling does not affect Plaintiff's assault and aggravated assault claims against
Defendant Officer Bode.

residence. To support her trespass claim, Plaintiff cites to this court's opinion in *Montes v. Gallegos*, 812 F.Supp. 1165, 1170 (D.N.M. 1992) (granting plaintiff's motion for summary judgment on trespass claim because court had already ruled that defendant police officer had entered plaintiff's home with warrant lacking any indicia of probable cause).

At the hearing, Plaintiff seemed to predicate her trespass argument on the fact that the officers approached the door under the carport near at the northwestern corner of Mr. Nicolds' home, which Plaintiff contends was the back door to the residence.[4] (Tr. at 7.) Plaintiff contended that the north facing door near the northeast corner of the residence was actually the front door. However, Defendants pointed to criminalistics photographs showing that the northeast door and entryway were blocked off by furniture while the entryway under the carport was unobstructed and in use. (Tr. at 7.) Consequently, Defendants argued that Officer Bode had approached the actual front door, which was the door under the carport, and the officers had not trespassed on Mr. Nicolds' property.

Finally, Plaintiff contended that whether the northeastern door was or was not in use on September 16, 1996, is irrelevant. Anyone approaching the house, including the Defendant Officers, would have believed that the north facing door was the front door to Mr. Nicolds' 2214 residence, even if it was obstructed and could not be used to enter the residence.

At the hearing, I ruled that Plaintiff's state law trespass claim against the officers based

---

[4] In her Amended Complaint, however, Plaintiff alleged that the door at the northwest corner of the house under the carport, which Officer Bode approached and through which he shot at Mr. Nicolds, was the front door. *See* Amended Compl. ¶ 50 ("It is necessary to pass through the living room to get to the front door which is next to the kitchen."), ¶ 55 ("Mr. Nicolds came through the living room, and began walking towards the front door to investigate.").

on their having walked across Mr. Nicolds' property to approach his house should be dismissed. The officers were justified in approaching Mr. Nicolds' home to investigate reports they had received of a one-car accident involving Mr. Nicolds' vehicle. *See* N.M. STAT. ANN. § 29-1-1; *Romero*, 119 N.M. 690, 693, 895 P.2d 212, 215. My ruling in *Montes* is distinguishable because there I concluded as a matter of law that the defendant had trespassed because the warrant was so lacking in indicia of probable cause that defendant was not protected by qualified immunity.

I also ruled that Plaintiff's state law trespass claim against the officers based on their entry into Mr. Nicolds' house after the shooting should be dismissed. The officers were obviously justified in entering Mr. Nicolds' kitchen to attend to Mr. Nicolds' injuries. Defendant Officer Ryan testified that the officers entered the house because they were afraid that someone dangerous might be in the house. (Ryan Depo. Ex. B at 94.) Officer Robertson also testified that the officers entered Mr. Nicolds' house because they feared someone threatening might have been in the house or that Mr. Nicolds might have hurt someone in the house. (Robertson Depo. Ex. C at 93.) A risk of danger to officers or other individuals inside a residence can constitute an exigent circumstance justifying a warrantless search of the residence. *See Minnesota v. Olson*, 495 U.S. 91, 100 (1990). Here, the shooting created a risk of danger to the officers and to other people who might have been in Mr. Nicolds' home. This gave rise to exigent circumstances justifying the officers' entry and subsequent search of the home.

d. <u>False Arrest and False Imprisonment</u>

Plaintiff's Amended Complaint also alleged that Defendants are liable for the state tort claims of false arrest and false imprisonment. Defendants assert that these torts have merged under New Mexico law into a single tort of false imprisonment and cite *Martinez v. Sears*,

*Roebuck & Co.*, 81 N.M. 371, 373, 467 P.2d 37, 39 (Ct. App.), *cert. denied*, 81 N.M. 425, 467 P.2d 997 (1970). *See also* 32 AM. JUR. 2D, *False Imprisonment*, § 3 (1995) ("Some courts have described false arrest and false imprisonment as causes of action which are distinguishable only in terminology.") In her Response, Plaintiff failed to cite any cases stating the elements of false arrest, although she referred to her claim as one for "false imprisonment/false arrest." (Resp. at 15.) Plaintiff has evidently either abandoned her false arrest claim or agrees with Defendants that the two torts have merged. Failure to respond to an argument constitutes consent to the granting of a motion. *See* D.N.M.LR-Civ 7.5(b) (failure to file "a response in opposition to any motion constitutes consent to grant the motion"). Therefore, without deciding whether these torts have merged under New Mexico law,[5] I will address only Plaintiff's claim for false imprisonment.

"False imprisonment involves the unlawful interference with the personal liberty or freedom of locomotion of another." *Diaz v. Lockheed Electronics*, 95 N.M. 28, 30, 618 P.2d 372, 374 (Ct. App. 1980). This theory makes little sense in the context of this case. At the time Defendant Officers Robertson and Ryan entered the house, Mr. Nicolds was already incapacitated. It is hard to imagine how Defendant Officers Robertson and Ryan could interfere with Mr. Nicolds' liberty or freedom of locomotion as he lay fatally wounded on the floor of his home. Moreover, Plaintiff has not come forward with admissible evidence that any of the officers pointed their weapons directly at Mr. Nicolds or that Mr. Nicolds saw Officer Robertson

---

[5] There seems to be some question whether these torts have actually merged in New Mexico. *See Lopez v. American Airlines Inc.*, 122 N.M. 302, 923 P.2d 1187 (Ct. App. 1996) (case submitted to a jury on claims for false imprisonment and false arrest).

or Officer Ryan point their weapons at him. Plaintiff's request that her assault and aggravated assault claims against Defendant Officers Robertson and Ryan be dismissed also supports dismissal of the false imprisonment claim because the two claims are factually related. For these reasons, I granted Defendants' motion for partial summary judgment on Plaintiff's false imprisonment and false arrest claims against Officers Robertson and Ryan.[6]

### 2. Section 1983 Fourth Amendment Excessive Force Claim

In Plaintiff's Response she clarified the bases of her § 1983 excessive force claims against Defendant Officers Robertson and Ryan. First, Officer Robertson failed to intervene to prevent Officer Bode's use of excessive force. Second, Officers Robertson and Ryan were deliberately indifferent to Mr. Nicolds' medical needs because they failed to render medical assistance. Third, it was clearly established that the Defendant Officers' planting of evidence would violate Mr. Nicolds' constitutional rights. (Resp. at 18-21.) At the hearing I ruled on the first two claims, and I now rule on the third.

Because the claim of deliberate indifference to a known medical need is the subject of Defendants' Motion for Summary Judgement No. IV, and is discussed *infra*, it is not addressed here.

### a. Officer Robertson's Failure to Intervene

Tenth Circuit law is clear that law enforcement officers may be liable under § 1983 if they fail to intervene to prevent another law enforcement officer from using excessive force. *See Mick v. Brewer*, 76 F.3d 1127, 1136 (10th Cir. 1996).

---

[6] This ruling does not affect Plaintiff's false arrest/false imprisonment claim against Officer Bode.

11

At the time Officer Bode shot Mr. Nicolds, Officer Robertson was walking away from where Officer Bode stood at the screen door near the northwest corner of the house. (Robertson Depo. Pl. Ex. C at 71.) Officer Robertson was "maybe a step or two around the [southwestern] corner" of the house at the time the shooting began. *Id.* After hearing Officer Bode say "[o]h, gun," Officer Robertson turned and saw Officer Bode draw his weapon and fire. (Robertson Depo. Pl. Ex. C at 80.) Officer Robertson testified that about one second elapsed between Officer Bode saying "oh, gun" and firing his weapon. *Id.* at 81. After a very brief pause, Officer Bode fired again into the screen door.

At the hearing, the parties argued over the length of the pause between the first shots and the final shot or shots. The neighbor who observed the event, David Johnson, stated that after the first few shots "things were quiet for a minute, well just for a couple of seconds. [Officer Bode] stopped shooting, he started saying something to the other officer, then he shot again . . . ." (Johnson Statement Ex. 13, p. 1 attached to Defs. Resp. to Mot. to Amend Compl.). Officer Robertson testified that there was a "definite pause" that lasted "about a second" between the first shots and the shot or shots that followed the pause. (Robertson Depo. Pl. Ex. C at 86.)

Counsel for Plaintiff argued at the hearing that Officer Robertson could have intervened and prevented Officer Bode's use of excessive force in three ways: 1.) by telling Officer Bode to identify himself as an APD officer when Officer Bode approached Mr. Nicolds' door; 2.) by directing Officer Bode to stand outside the "fatal funnel"[7] when he knocked on Mr. Nicolds'

---

[7] The court understands this term to refer to an expanding area emanating from Mr. Nicolds' doorway in which Mr. Nicolds, or anyone standing in the house, would have had a direct line of fire to Officer Bode. In other words, Officer Bode should have taken cover.

door; and 3.) by instructing Officer Bode to take cover after the initial shots, circumventing the need for Officer Bode to fire an additional shot or shots.

At the hearing, counsel for Plaintiff conceded that Officer Robertson's failure to instruct Officer Bode to comply with police procedures was "probably" only negligence, not recklessness.[8] (Tr. at 28.) Under the circumstances of this case, Officer Robertson could not have intervened to prevent Officer Bode's alleged use of excessive force for two reasons. First, Officer Robertson was not in a position to see whether Mr. Nicolds actually had a gun or posed a threat to Officer Bode. Second, even if Mr. Nicolds did not have a gun, the distance between the two officers and the rapidity of events would have made it impossible for Officer Robertson to intervene. This is true whether one second or three seconds elapsed between the first shots and the final shot or shots. *See O'Neill v. Krzeminski*, 839 F.2d 9, 11 (2nd Cir. 1988) (finding that officer did not have time to intervene because "[t]he three blows [to plaintiff's head] were struck in such rapid succession that [defendant officer] had no realistic opportunity to attempt to prevent them."); *compare Mick*, 76 F.3d at 1137 (reversing grant of summary judgment for defendant officer on plaintiff's claim of failure to intervene when eyewitnesses said officer had time to prevent another officer from dragging, kicking, and beating plaintiff).

    b.    <u>Tampering with Evidence</u>

In her Response, Plaintiff argues that Officers Robertson and Ryan are liable under § 1983 because at the time of the shooting it was clearly established that the planting of a gun by

---

[8] "Mere negligent actions precipitating a confrontation would not, of course, be actionable under § 1983." *Sevier v. City of Lawrence, Kansas*, 60 F.3d 695, 699 n. 7 (10th Cir. 1995) (citation omitted).

Mr. Nicolds' body would violate Mr. Nicolds' constitutional rights. (Resp. at 21; Amended Compl. ¶¶ 124(c), 138, 144.) Therefore, Plaintiff argues, this court should deny Defendant Robertson's and Ryan's motion for summary judgment on the ground of qualified immunity.

Under the qualified immunity doctrine, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Once a defendant raises the qualified immunity defense, the plaintiff bears the "burden of convincing the court that the law was clearly established." *Pueblo Neighborhood Health Centers, Inc. v. Losavio*, 847 F. 2d 642, 645 (10th Cir. 1988). To do so, the plaintiff "must do more than identify in the abstract a right and allege that the defendant has violated it." *Id.* In order for pre-existing law to be clearly established, there must ordinarily "be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as plaintiff maintains." *Medina v. City and County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992). The question whether a plaintiff has invoked "clearly established law" is a question of law which the district court must decide. *Losavio*, 847 F.2d at 646.

Plaintiff argues that "this Court should deny Defendant's motion for summary judgment on qualified immunity grounds based on the fact that the planting of evidence by Officer Robertson and Officer Ryan is a violation of Mr. Nicolds' constitutional rights and this was clearly established on September 16, 1996." (Resp. at 21.) Plaintiff does not state which of Mr. Nicolds' constitutional rights were violated, although this argument is contained in a section of Plaintiff's Response discussing Officer Robertson's and Officer Ryan's use of excessive force.

14

*Id.* In her Response, Plaintiff cited a single case in support of her argument, *Riley v. City of Montgomery*, 104 F.3d 1247, 1253 (11th Cir. 1997) (finding that an officer's planting of cocaine in plaintiff's car, which led to plaintiff's conviction for drug charges, could constitute a violation of plaintiff's constitutional rights and give rise to officer's liability under § 1983).

Plaintiff's shotgun approach to this case and her written submissions have created confusion about the constitutional basis of Plaintiff's claim of planting evidence.[9] In Count III of her Amended Complaint, Plaintiff appears to allege that Defendant Officers tampered with evidence in violation of Mr. Nicolds' Fourth and Fourteenth Amendment rights. (Amended Compl. ¶¶ 124, 138, 139, 142, 144.) However, statements in Plaintiff's Response seem to present this theory only as an excessive force claim brought under the Fourth Amendment. (Resp. at 21.) When I questioned Plaintiff's counsel at the hearing about the nature of the constitutional violations underlying the tampering with evidence claim, counsel submitted a

_____

[9] Defendants contend that the June 11, 1998, Order dismissing the § 1983 spoliation of evidence claims also disposed of any § 1983 claims for planting evidence. That is not the case. In the June 11, 1998, Order, I cited to Plaintiff's Amended Complaint when discussing the dismissal of Plaintiff's § 1983 spoliation of evidence claim. *See* June 11, 1998, Order (Doc. No. 54) (citing to Am. Compl. ¶¶ 124, 138, 144.) In paragraphs 138 and 144, Plaintiff alleged that Defendants spoliated evidence *and* tampered with evidence. "Spoliation" is defined in Black's Law Dictionary as "[t]he intentional destruction of evidence and when it is established, fact finder may draw inference that evidence destroyed was unfavorable to party responsible for its spoliation." BLACK'S LAW DICTIONARY 1401 (6th ed. 1990); *see also Aramburu v. Boeing Co.*, 112 F.3d 1398, 1407 (10th Cir. 1997) ("[T]he general rule is that bad faith destruction of a document relevant to proof of an issue at trial gives rise to an inference that production of the document would have been unfavorable to the party responsible for its destruction."). Spoliation of evidence, which involves the destruction of evidence and an inference at trial in favor of the non-responsible party, is distinct from tampering with or planting evidence, which in this case obviously involves the alleged planting of a weapon by Mr. Nicolds' body--not the weapon's destruction. Dismissal of Plaintiff's spoliation of evidence claim did not affect Plaintiff's tampering with evidence claim.

proposed jury instruction indicating that tampering with evidence violated Mr. Nicolds' constitutional right of access to the courts, which would implicate the First and Fourteenth Amendments. *See Ryland v. Shapiro*, 708 F.2d 967, 971 (5th Cir. 1983) (stating that "[i]t is clear that the [Supreme] Court viewed the right of access to the courts as one of the privileges and immunities accorded citizens under article 4 of the Constitution and the fourteenth amendment" and observing that the Supreme "Court had also found in the first amendment a second constitutional basis for this right of access . . . . 'the right to petition.'") (quotations and citations omitted); *Love v. Bolinger*, 927 F.Supp. 1131, 1137-38 (S.D. Ind. 1996) (stating that the First and Fourteenth Amendments protect the right of access to the courts and that a cover-up can give rise to a claim for denial of access to the courts); *Sigafus v. Brown*, 416 F.2d 105 (7th Cir. 1969) ("[R]easonable access to the courts is guaranteed as against state action by the Due Process Clause of the Fourteenth Amendment.") (citing *Johnson v. Avery*, 393 U.S. 483, 498 n. 24 (1968)).

Plaintiff has been far from clear, then, about the constitutional basis of her claim that the officers' tampering with evidence gives rise to § 1983 liability. From what I can discern from Plaintiff's briefs and argument, she does not intend to allege that planting the gun violated Mr. Nicolds' Fourth Amendment right to be free from excessive force. Instead, Plaintiff seems to want to allege that planting the gun violated Mr. Nicolds' due process right to a fair trial and access to the courts under the Fourteenth Amendment.[10] However, Plaintiff failed to allege in her Amended Complaint that Defendants' alleged planting of the gun violated Mr. Nicolds'

---

[10] Count III of Plaintiff's Amended Complaint does not allege First Amendment violations.

16

Fourth or Fourteenth Amendment right of access to the court or right to a fair trial. *See* Amended Complaint, Count III.[11]

To the extent that Plaintiff argues that the planting of evidence violated Mr. Nicolds' Fourth Amendment right to be free from excessive force, as her Response implies, the Defendant Officers are entitled to qualified immunity. A single case from the Eleventh Circuit does not show that it was clearly established at the time of the shooting that the planting of evidence in this case, which never led to the prosecution of Mr. Nicolds' for any crime, would violate Mr. Nicolds' Fourth Amendment right to be free from excessive force.[12] Thus, the plaintiff has not shown that it was clearly established at the time of the incident "within a sufficiently analogous factual setting," *Medina v. City and County of Denver*, 960 F.2d 1493, 1497 (10th Cir. 1992), that the alleged planting of evidence violated Mr. Nicolds' Fourth Amendment right to be free

---

[11] Plaintiff makes vague allegations that Defendants' alleged tampering with evidence was "an abuse of power," that violated the Fourteenth Amendment, *see, e.g.,* Amended Compl. ¶¶ 142, 145; Plaintiff also alleges that Defendants' alleged tampering with evidence violated Mr. Nicolds' Fourth Amendment right against unreasonable search and seizure and to be free from excessive force, *see, e.g.,* Amended Compl. ¶ 124. Nowhere does Plaintiff specifically allege that Defendants violated Mr. Nicolds' Fourth or Fourteenth Amendment *right of access to the courts* or *right to a fair trial*. Moreover, Plaintiff's unfiled motion to amend her Amended Complaint, which was submitted to me on January 29, 1999, for my *in camera* review, seeks to add these claims. This strongly implies that the Plaintiff realizes her Amended Complaint failed to allege any Fourth or Fourteenth Amendment right of access to the court or right to a fair trial. A separate Memorandum Opinion and Order will address Plaintiff's motion to amend her Amended Complaint.

[12] Moreover, in *Riley* the Eleventh Circuit cited to two cases regarding the due process right to a fair trial, which implicates the Fourteenth Amendment, and one case about the right to be free from unreasonable searches and seizures, which would implicate the Fourth Amendment. *Id.* The case discussing the right to be free from unreasonable searches and seizures, *Whiting v. Traylor*, 85 F.3d 581, 585 (11th Cir. 1996), is inapposite to this case. *Whiting* involved a § 1983 claim for malicious prosecution in violation of the plaintiff's Fourth Amendment rights. Here, of course, Mr. Nicolds was never prosecuted.

from excessive force. Defendant Officers Robertson and Ryan are entitled to qualified immunity and Plaintiff's claim of § 1983 liability based on the alleged planting of evidence in violation of Mr. Nicolds' Fourth Amendment rights should be dismissed.

### 3. Illegal Search and Seizure Claim

In Count III of Plaintiff's Amended Complaint she alleged that Officers Robertson and Ryan violated Mr. Nicolds' Fourth Amendment right to be free from unreasonable searches and seizures. Plaintiff argues that once Officer Robertson and Officer Ryan "saw that Mr. Nicolds did not have a gun, their entry into his home cannot be characterized as a protective sweep." (Resp. at 22.) She contends that Officers Robertson and Ryan acted beyond the scope of the protective sweep exception when they seized a revolver from the back bedroom and planted it by Mr. Nicolds' body. *Id.*

As discussed above, a risk of danger to officers or other individuals inside a residence can constitute an exigent circumstance justifying a warrantless search of the residence. *See Minnesota v. Olson*, 495 U.S. 91, 100 (1990). Whether or not Officer Bode was justified in shooting Mr. Nicolds, the shooting created a risk of danger to the officers and to other people who might have been in Mr. Nicolds' home at the time of the shooting. Because exigent circumstances existed, Officers Robertson and Ryan were justified in conducting a protective sweep of Mr. Nicolds' home. For these reasons, I dismissed Plaintiff's illegal search and seizure claims against Officer Robertson and Officer Ryan.

18

B.  Defendant's "Motion for Partial Summary Judgment No. IV: Dismissal of Deliberate Indifference to a Known Medical Need and John Doe Claims

In Plaintiff's Amended Complaint she averred that Defendant Officers violated Mr. Nicolds' Fourth and Fourteenth Amendment rights by failing to provide him with medical assistance.[13] (Amended Compl. ¶¶ 124, 136, 139, 144, 145.) Her Amended Complaint also contained claims against John Does under § 1983 and for state law violations. Defendants' fourth motion for partial summary judgment seeks dismissal of these claims. At the hearing, I granted Defendants' motion.

1.  *Section 1983 claims for Deliberate Indifference to a Known Medical Need*

Defendant Officers argue that the defense of qualified immunity protects them from Plaintiff's Fourth Amendment claim of deliberate indifference to a known medical need and that the Defendant Officers satisfied their duty under the Fourteenth Amendment and Tenth Circuit law to provide medical assistance. At the hearing, I ruled that Plaintiff's § 1983 claim for deliberate indifference to a known medical need should be dismissed with prejudice because the Defendants are entitled to qualified immunity. Although this ruling is not affected by the parties' dispute over the admissibility of two affidavits submitted with Plaintiffs' Response, I also

---

[13] In the June 11, 1998, Order, I dismissed the Plaintiff's Fourteenth Amendment substantive due process claims arising from the Defendant Officers' alleged use of excessive force. (Doc. No. 54.) The court did not intend to dismiss Plaintiff's Fourteenth Amendment substantive due process claims arising from Defendant Officers' alleged deliberate indifference to known medical needs.

address that issue.[14]

    a.    Affidavits of Kurt Nolte, M.D., and R. Matthew Doughty

On October 7, 1998, Plaintiff filed her Response. Attached to the Response was the affidavit of R. Matthew Doughty. (Doughty Aff. Ex. C.) In Defendant Officers' Reply they asserted that this affidavit is inadmissible for the purposes of summary judgment because Plaintiff failed to make a timely disclosure of Mr. Doughty's expert opinions by the February 24, 1998, deadline.

On October 15, 1998, Plaintiff filed the affidavit of Kurt Nolte, M.D. to be considered along with Plaintiff's Response. After Defendants voiced their concern that this was an improper method of bringing Dr. Nolte's affidavit to the Court's attention, on December 29, 1998, Plaintiff filed a "Second Unopposed Motion Nunc Pro Tunc" to add the Nolte Affidavit to her Response. Based on the representation that the motion was unopposed, I entered an order on January 6, 1999, allowing the Nolte Affidavit to be added. On January 15, 1999, Defendants filed a Response to Plaintiff's "Second Unopposed Motion Nunc Pro Tunc," arguing that, although the Defendants had agreed to allow the Plaintiff to file the motion, they had reserved their right to oppose the Nolte Affidavit. Defendants contend that the court should not consider the Nolte Affidavit because Plaintiff failed to make a timely disclosure of Dr. Nolte's expert opinions by

---

[14] On April 13, 1999, the day after the hearing, Plaintiff hand-delivered a letter to the court that essentially constituted an informal motion to reconsider the court's ruling on Plaintiff's § 1983 claims of deliberate indifference to a known medical need. In that letter, Plaintiff appeared to be under the misperception that the court's ruling hinged upon a decision that the two affidavits at issue are inadmissible. However, the court's ruling on Plaintiff's claims is not contingent upon the admissibility of these two affidavits, as this Memorandum Opinion and Order should make clear.

the February 24, 1998, deadline.

The deadline in this case for identifying expert witnesses and disclosing their Rule 26 reports expired on February 24, 1998. Plaintiff evidently failed to identify Dr. Nolte or Mr. Doughty as expert witnesses, or to produce their reports, by the February 24, 1998, deadline. (Def.'s Resp. Memo. to Pl.'s Second Unopposed Mot. Nunc Pro Tunc at 4.) Instead, Plaintiff waited nearly eight months before springing these expert witnesses on the Defendants, which was after Defendants had prepared their Motion for Summary Judgment No. IV. When asked at the hearing why the court should consider the two affidavits as timely filed, Plaintiff's counsel responded, "I'm not sure I have a good argument for that." (Tr. at 63.) However, Plaintiff's counsel then offered an explanation for the dilatory filing of Dr. Nolte's affidavit, which was that it was "newly discovered evidence" based on Plaintiff's counsel having recently been informed that the out-of-state pathologist they had planned on using was unavailable. (Tr. at 63.)

In his January 8, 1999, opinion, Judge Garcia discussed the consequences of failing to comply with discovery deadlines (Doc. No. 146). The Federal Rules of Civil Procedure state that a "party that without substantial justification fails to disclose information required by Rule 26(a) . . . shall not, unless such failure is harmless, be permitted to use as evidence . . . on a motion any witness or information not so disclosed." Fed. R. Civ. P. 37(c)(1). *See also* Fed. R. Civ. P. 37(c)(1) advisory committee's note (the revision of Fed. R. Civ. P. 37(c) provides for a self-executing sanction for failing to comply with Rule 26(a) and "provides a strong inducement for disclosure of material that the disclosing party would expect to use as evidence . . . on a motion, such as one under Rule 56."). Because Plaintiff's counsel waited nearly eight months to reveal the names of Dr. Nolte and Mr. Doughty, which was eight months after the pretrial order

required them to do so, and after Defendants had prepared their motion for summary judgment, the failure to comply with Rule 26(a) is not harmless and the two affidavits will not be considered.

Since Plaintiff failed to comply with a pretrial order in this case, (Doc. No. 18), the admission of the affidavits may also be denied under Fed. R. Civ. P. 16(f) and 37(b)(2)(B). *See United States v. 68.94 Acres of Land*, 918 F.2d 389, 396 (3d Cir. 1990) ("As a sanction for the failure to obey a pre-trial order, the Federal Rules of Civil Procedure authorize district courts to prohibit the admission of evidence proffered by the disobedient party" under Fed. R. Civ. P. 16(f) and 37(b)(2)(B)). However, even if I considered these two affidavits, I would rule that Plaintiff's claims of deliberate indifference to a known medical need should be dismissed on the ground of qualified immunity.

b.    <u>Deliberate Indifference to Known Medical Need under the Fourth Amendment</u>

The Plaintiff has failed to cite any Supreme Court or Tenth Circuit case establishing that Defendant Officers' failure to render medical assistance to Mr. Nicolds violated his Fourth Amendment rights.[15] In Plaintiff's Response, she cited to *Martin v. Bd. of Comm'rs*, 909 F.2d 402 (10th Cir. 1990), but this case does not support Plaintiff's Fourth Amendment claim. In *Martin*, the Plaintiff brought a Fourth Amendment excessive force claim and a separate

---

[15] In Plaintiff's Response, she argues that the Defendants "did not cite to one case that supports their contention that Officers Bode, Robertson, and Ryan's [sic] did not violate Mr. Nicolds clearly established Fourth Amendment rights by failing to render medical assistance . . . ." Plaintiff misapprehends the law of qualified immunity. Once a defendant raises the qualified immunity defense, the *plaintiff* bears the burden of showing that the law is clearly established. *Howard* 34 F.3d at 981.

*Fourteenth* Amendment claim for violation of the right to adequate regard for medical needs during pretrial detention.[16]

The only other case Plaintiff cited is a district court opinion from the Northern District of New York. *See Hogan v. Franco*, 896 F.Supp. 1313, 1318 (N.D.N.Y. 1995). A single case from a federal district court outside of the Tenth Circuit does not establish that the law is "clearly established" for purposes of qualified immunity. *See Medina*, 960 F.2d at 1498. Therefore, the Defendant Officers are entitled to qualified immunity on Plaintiff's claim of deliberate indifference to Mr. Nicolds' medical needs under the Fourth Amendment.

      c.    <u>Deliberate Indifference to a Known Medical Need under the Fourteenth Amendment</u>

Plaintiff's claim of deliberate indifference to a known medical need under the Fourteenth Amendment is essentially based on two grounds. Plaintiff first argues that Defendant Officers' failed to administer first aid to Mr. Nicolds and attend to his sucking chest wound. Second, Plaintiff contends that the officers did not immediately call for rescue, although rescue personnel were in the area, and actually delayed rescue personnel from attending to Mr. Nicolds for approximately five to six minutes after the shooting because the officers were planting a gun and tampering with evidence instead of trying to contact rescue personnel. (Resp. at 21-22.)

---

[16] Regarding plaintiff's Fourth Amendment excessive force claim, in *Martin* the Tenth Circuit held that the plaintiff "has demonstrated that defendants' alleged deliberate and unreasonable conduct in effecting her arrest created a serious known risk of physical trauma resulting in aggravation of an existing fracture to her neck in violation of clearly established law." *Id.* at 407. Thus, plaintiff's claim was predicated on the officers' "deliberate and unreasonable conduct" in arresting the plaintiff--not in failing to personally provide her with medical care.

23

i.   *Defendant Officers' failure to administer first aid to Mr. Nicolds*

The legal standard for a claim of deliberate indifference to a pretrial detainee's known medical needs under the Fourteenth Amendment is clearly established. *Howard v. Dickerson*, 34 F.3d 978 (10th Cir. 1994). The Tenth Circuit, however, has "not spoken on the issue of a duty to *provide*, as well as summon, medical care under the Fourteenth Amendment." *Wilson v Meeks*, 52 F.3d 1547, 1555 (10th Cir. 1995) (emphasis added).

In *Wilson*, the Tenth Circuit reversed the district court's denial of defendant's motion for summary judgment on plaintiff's claim that defendant officers failed to render medical aid. In doing so, the Tenth Circuit observed that the only authority cited by the district court in support of the officers' duty to provide medical aid was ambiguous dictum from a Ninth Circuit case. *Id.* (citing *Maddox v. City of Los Angeles*, 792 F.2d 1408 (9th Cir. 1986)). The Tenth Circuit stated, "We believe that *Maddox* supports the opposite position, holding there is *no duty to give*, as well as summon, medical assistance, even if police officers are trained in CPR." *Id.* (emphasis added). Although the Tenth Circuit found there was no established duty to provide medical aid, the court went on to distinguish between medical aid and first aid. The court stated that "[f]ew citizens would be likely to want police officers to render medical aid. Such steps are best left to the qualified and highly trained personnel who act as paramedics or EMTs." *Id.* at 1555-56.

Here, Plaintiff argued that none of the Defendant Officers provided aid, even though Officer Bode had paramedic-type training. (Resp. at 21.) In her Response, Plaintiff recited in detail the proper steps for caring for a sucking chest wound. *Id.* It appears, then, that Plaintiff is arguing that the Defendant Officers are liable under § 1983 because they did not properly treat Mr. Nicolds' sucking chest wound. Treatment of Mr. Nicolds' sucking chest wound falls under

24

the purview of medical care. Under *Wilson*, however, the officers had no duty to provide medical care or medical aid, and Plaintiff has not cited to any case establishing such a duty.[17]

As for first aid, the Tenth Circuit said that "[t]he goal of first aid is to sustain life until those who render medical aid arrive." *Id.* at 1556. "[F]irst aid attends to a patient's "ABC"-- airway, breathing, and circulation." The Tenth Circuit did not establish a duty of officers to provide first aid, although the court also did not foreclose the possibility that officers might have such a duty under certain facts. *Id.* ("We do not hold here that police officers never have a duty to give first aid," but "we see no such duty on these facts.").

It would be difficult to construe *Wilson's* language about first aid as forming the basis of a "clearly established" and "particularized" duty to render first aid in this case. Even if there were such a duty, however, Defendant Officers satisfied it. Officer Bode testified that Mr. Nicolds was breathing immediately after he was shot. (Bode Depo. Def.'s Ex. C at 134.) Therefore, Mr. Nicolds' airway seems to have been clear, which would negate the officers' need to attend to Mr. Nicolds' airway. Officer Bode also checked for a pulse, but found none. (Bode

---

[17] The cases cited in Plaintiff's Response say that deliberate indifference to a known medical need violates the Fourteenth Amendment, but they do not establish that officers have a duty to provide medical aid themselves. *See Howard v. Dickerson*, 34 F.3d 978 (10th Cir. 1994) (claim of deliberate indifference to medical need based on officers' handcuffing plaintiff in back, despite her neck injury, and officer's refusal of plaintiff's request for a doctor); *Garcia v. Salt Lake County*, 768 F.2d 303, 308 (10th Cir. 1985) (deliberate indifference to medical need based on failure to provide adequate medical observation for man who died in custody); *Martin v. County Comm'rs of County of Pueblo*, 909 F.2d 402, 406 (10th Cir. 1990) (deliberate indifference to medical need based on officers' failure to heed medical warnings while arresting injured plaintiff); *Frohmader v. Wayne*, 958 F.2d 1024, 1029 (10th Cir. 1992) (denying claim of deliberate indifference to known medical need based on plaintiff's alleged need for medical treatment for agoraphobia and claustrophobia because plaintiff failed to show serious medical need).

25

Depo. Def.'s Ex. C at 151.) After finding no pulse, Officer Bode informed Officers Robertson and Ryan that Mr. Nicolds was dead. *Id.* Having been told that Mr. Nicolds was dead, there would be no reason for Officers Robertson or Ryan to provide first aid. Thus, even if there was a clearly established duty to provide first aid, under the undisputed facts the Defendant Officers satisfied that duty.

> ii.    *Defendant Officers did not immediately call for rescue and delayed first aid from coming to the scene*

Plaintiff contends that Defendant Officers "did not call for rescue immediately even though rescue units were in the area." (Resp. at 21.) Plaintiff also asserts that Defendant Officers "*delayed* first aid from coming to the scene for approximately five to six minutes while they planted a gun and tampered with evidence at the scene in order to disguise their liability," (Resp. at 22) (emphasis in original). In support of these allegations, Plaintiff cites only to the report of her expert, Michael Cosgrove, where he makes conclusory allegations unsupported by citations to any evidence. (Cosgrove Report Ex. A at 15.)

Plaintiff argues that Defendant Officers failed to make efforts to enlist the aid of paramedics, who had gone to the neighborhood in response to the initial report of a one-car accident involving Mr. Nicolds' vehicle. Plaintiff further contends that if the officers had contacted them, Mr. Nicolds would have been alive when the paramedics arrived. (Resp. at 10.) Although Officer Ryan observed five to six rescue personnel in the area while he was driving to Mr. Nicolds' residence, Officer Ryan also testified that he did not know whether they were still in the vicinity at the time of the shooting. (Ryan Depo. Pl. Ex. E at 73.) While in hindsight it might have been advantageous for the Defendant Officers to have sought assistance from the

paramedics if they were still at the scene of the vehicle accident at the time of the shooting, this court finds that the failure to do so did not constitute a constitutional violation. Defendant Officers met their duty to promptly summon rescue by radioing for assistance within seconds or minutes of the shooting.

Officer Robertson radioed for an ambulance "as the shots were being fired." (Robertson Depo. Pl. Ex. F at 95.) Based on his experience at other crime scenes, Officer Robertson expected rescue to arrive in three to five minutes. *Id.* at 96. Officer Ryan also called for rescue from inside Mr. Nicolds' home. (Ryan Depo. Def. Ex. B at 109.) A computer analysis of the radio transmissions that day indicates that dispatch reported the shooting and possibly one down at 4:02 P.M. and that recuse personnel were reported at the scene by 4:07 P.M. (CAD Event Analysis Report, Ex. 6 to Def. Resp. Mem. to Pl. Second Unopposed Mo. Nunc Pro Tunc.) Although Officer Ryan testified he was unsure whether his message was being received because of radio problems and he had to repeat his calls for rescue, (Ryan Depo. Def. Ex. A at 95-96, 103), Plaintiff has offered insufficient evidence to support her misleading assertion that "[r]escue was not called because the Officers' radios were not working." (Resp. at 8.)

Nor is there evidence to support Plaintiff's blithe assertion that Defendant Officers "*delayed* first aid from coming to the scene for approximately five to six minutes while they planted a gun and tampered with evidence," (Resp. at 22) (emphasis in original). Plaintiff did not cite to the record or otherwise supply evidence to support this assertion.

*2.  John Doe Claims*

In Plaintiff's Amended Complaint, she averred § 1983 claims and state tort claims against John Doe Defendants. (Amended Compl. ¶ 12.) At the hearing, counsel for Plaintiff agreed that this court's prior rulings rendered Plaintiff's John Doe claims moot.[18] (Tr. at 29.) I then granted Defendant Officers' motion for partial summary judgment on Plaintiff's John Doe claims.

Finally, I ruled that Plaintiff could not present evidence from Ron Metzger, although Plaintiff will be permitted to make an offer of proof regarding his testimony before the trial begins.

IT IS THEREFORE ORDERED that :

(1)  Defendants' Motion for Summary Judgment No. III (Doc. No. 105) is GRANTED; Plaintiff's claims against Defendant Officer Robertson and Ryan for assault, aggravated assault, battery, aggravated battery, false imprisonment, false arrest, trespass, illegal search and seizure, and excessive force will be dismissed with prejudice; and

(2)  Defendants' Motion for Summary Judgment No. IV (Doc. No. 115) is GRANTED; Plaintiff's Fourth and Fourteenth Amendment claim of deliberate indifference to a known medical need against Defendant Officers Bode,

---

[18] My Order of February 8, 1999, (Doc. No. 168), and Judge Garcia's Order of January 8, 1999, (Doc. No. 148), foreclosed further discovery based on the theory that the gun found by Mr. Nicolds' was "newly discovered" evidence because Plaintiff believed the officers had tampered with it.

Robertson, and Ryan, will be dismissed with prejudice; and Plaintiff's claims against the John Doe defendants will also be dismissed with prejudice.

UNITED STATES DISTRICT JUDGE

# 2214 and 2500 Garfield S.E.



**2214 Garfield SE**

North

Cement Patio

Covered Walkway · Porch

Kitchen · Livingroom

Bathroom · Hall

Southwest Bedroom · Southeast Bedroom

Garfield

2218 Garfield

2214 Garfield

Garage

Dirt Road (Alleyway)

scale in feet 0 — 50

2500 Garfield

2502A Garfield

scale in feet 0 — 50

scale in feet 0 50 100 150 200

**Witnesses:**

1. David Johnson, 2216 Garfield, SE
2. Maria and Dora Budai, 2218 Garfield SE
3. Hugh Massey, 2214 Garfield SE
4. Barbara Mackey, Rose Garcia, 2206 Garfield SE
5. Cindy Myers, Jim Glesen, 423 Harvard SE
6. Tracy Schimpler, 2314 Garfield SE
7. Stephane Kuehm, 427 Stanford SE
8. Percilla Mountjoy, 414 Stanford SE



**DEFENDANT'S EXHIBIT**

**1**