**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

_____

DORIS PHILLIPS, as personal
representative of the estate of
RICHARD L. NICOLDS, Deceased,

        Plaintiff,

    vs.                                CIV No. 97-1324 JP/LFG

THE CITY OF ALBUQUERQUE,
ALBUQUERQUE POLICE DEPARTMENT,
CHIEF OF POLICE JOE POLISAR, individually
and in his official capacity, JOHN BODE,
individually and in his official capacity,

        Defendants.

## MEMORANDUM OPINION AND ORDER

On February 8, 1999, Defendant Officer Bode filed under Fed. R. Civ. P. 56 a "Motion

for Partial Summary Judgment No. V: Dismissal of the Excessive Force Claim Against Officer

Bode on the Basis of Qualified Immunity," (Doc. No. 171). On March 19, 1999, Defendant

Officer Bode also filed under Fed. R. Civ. P. 56 "Motion for Partial Summary Judgment No. VI:

Dismissal of the NMSA 1978 § 41-4-12 Claims," (Doc. No. 182).[1] After a thorough

consideration of the law, the pleadings and the briefs, and after holding a September 2, 1999,

hearing on these motions, I conclude that Defendant Officer Bode's motions should be denied.

---

[1] This motion and the memorandum brief in support of it refers to "Defendants" and
appears to be seeking relief on behalf of Officers Bode, Ryan, and Robertson. In a July 15, 1999
letter to the Court, however, counsel for Defendants clarified that this motion relates to the § 41-
4-12 claims alleged against only Defendant Officer Bode. As discussed, _infra_, the § 41-4-12
claims against Officers Robertson and Ryan were dismissed in a Memorandum Opinion and Order
entered July 12, 1999.

# I.     BACKGROUND

## A.     Factual Background[2]

On September 16, 1995 Officer Bode knocked on Mr. Nicolds' front door to investigate reports that Mr. Nicolds' vehicle had been involved in a one-car accident. Officer Bode claims that he identified himself as a police officer and that Mr. Nicolds approached the door with a .22 revolver pointed at Officer Bode's head. It is undisputed that Officer Bode shot at Mr. Nicolds several times through the screen door and continued shooting after Mr. Nicolds had fallen to the floor. Mr. Nicolds, who was struck twice by the bullets, died soon after the shooting.

Plaintiff has proceeded under two factually inconsistent theories of the case, and this has complicated and hindered the analysis and resolution of this lawsuit. Under one theory of the case, Mr. Nicolds approached the front door with either a set of keys in his hand or nothing in his hand but Officer Bode nevertheless pulled out his gun and, for reasons that are unclear, shot at Mr. Nicolds. Under this theory, the officers then planted the .22 revolver that was found by Mr. Nicolds' body to make the shooting appear justified.

Under Plaintiff's other theory of the case, she accepts that Mr. Nicolds approached the front door with a .22 revolver in his hand but claims that Officer Bode is still liable for excessive force under § 1983 and for various state tort claims because he failed to identify himself as a police officer when he knocked on Mr. Nicolds' door, because he failed to "seek cover" when he first walked up to Mr. Nicolds' door, and because after Mr. Nicolds approached the front door with a gun in his hand Officer Bode failed to "take cover" and belatedly identify himself as a

_____

[2] Because the factual background of this case is thoroughly set out in the July 12, 1999 Memorandum Opinion and Order, only the facts relevant to the motions under consideration are discussed in this opinion.

police officer, which would have avoided Officer Bode's need to use deadly force.

**B.    Procedural Background**

On November 10, 1997, Plaintiff filed an "Amended Complaint for Wrongful Death, Aggravated Battery, Battery, Aggravated Assault, Assault, Trespass, False Arrest, False Imprisonment, Negligent Supervision, Negligent Training, Spoliation of Evidence, and Fourth and Fourteenth Amendment Civil Rights Violations."   A June 11, 1998 Memorandum Opinion and Order, (Doc. No. 54), denied in part and granted in part Defendants' motion to dismiss and dismissed the following claims with prejudice: Count II ("Common Law Spoliation of Evidence"); the portion of Count III asserting a Fourth Amendment § 1983 claim based on spoliation of evidence; the portion of Count III alleging deprivation of due process based on gross negligence; Plaintiff's § 1983 claims alleged against the Albuquerque Police Department; the portions of Count III asserting substantive and procedural due process claims; and Count V ("Punitive Damages"), with the exception of the § 1983 claim asserted against the Defendant Officers in their individual capacities.

Defendants subsequently filed a total of six motions for partial summary judgment.  In a July 12, 1999 Memorandum Opinion and Order, (Doc. No. 214), I granted Defendants' Motion for Partial Summary Judgment No. III and dismissed with prejudice Plaintiff's claims against Defendant Officers Robertson and Ryan for battery, assault, trespass, false arrest, false imprisonment, excessive force, and illegal search and seizure.  I also granted Defendants' Motion for Partial Summary Judgment No. IV and dismissed with prejudice Plaintiff's John Doe claims and her Fourth and Fourteenth Amendment claims against Defendant Officers Bode, Ryan, and Robertson for deliberate indifference to a known medical need.  I reserved ruling on the first and

second motions for summary judgment, which are directed at Plaintiff's municipal liability claims, until after a trial on Plaintiff's primary claims.

## II.        SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed R. Civ. P. 56(c). "When applying this standard, we examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." *Applied Genetics Int'l., Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990) (citation omitted). The party moving for summary judgment bears the burden of "'showing'--that is, pointing out to the district court-- that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Only then does the burden shift to the non-movant to come forward with evidence showing that there is a genuine issue of material fact. *See Bacchus Indus. Inc. v. Arvin Indus. Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). The non-moving party may not avoid summary judgment by resting upon the mere allegations or denials of his or her pleadings. *Id*. The non-moving party also must present more than a mere scintilla of evidence in order to overcome a motion for summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 251 (1986). At the summary judgment stage, the court is not permitted to weigh the credibility of witnesses. *See Hirase-Doi v. U.S. West Communications Inc.*, 61 F. 3d 777, 785 n. 4 (10th Cir. 1995).

# III.    DISCUSSION

## A.    Motion for Partial Summary Judgment No. V: Dismissal of the Excessive Force Claim Against Officer Bode on the Basis of Qualified Immunity

Count III of Plaintiff's amended complaint alleges a § 1983 Fourth Amendment excessive force claim against Officer Bode. "To state a claim for excessive force under the Fourth Amendment, Plaintiff must first show that a seizure occurred and then that the seizure was unreasonable." *Diaz v. Salazar*, 924 F. Supp. 1088, 1095 (D.N.M. 1996) (citation omitted). A seizure occurs when an officer restrains a person's freedom to walk away. *See Tennessee v. Garner*, 471 U.S. 1, 7 (1985). In this case, Mr. Nicolds was seized for Fourth Amendment purposes when Officer Bode pointed his weapon at Mr. Nicolds and shot him. *See United States v. Maez*, 872 F.2d 1444, 1450 (10th Cir. 1989).

Plaintiff alleges that Officer Bode's shooting of Mr. Nicolds constituted excessive force and that the shooting "was the result of the dangerous situation which [Officer Bode] directly caused" by failing to identify himself while trespassing on Mr. Nicolds' property. According to Plaintiff's amended complaint, Mr. Nicolds was either holding a set of keys in his hand when Officer Bode shot him or, if Mr. Nicolds had a gun, he was lawfully protecting his property from unidentified trespassers. Plaintiff also seems to allege that Officer Bode's failure to identify himself as an officer and to take cover constitute excessive force.

Officer Bode contends that Plaintiff's excessive force claim should be dismissed on the basis of qualified immunity. He argues that his conduct preceding the shooting was reasonable and did not create the need to use deadly force against Mr. Nicolds. Finally, Officer Bode contends that based on the totality of the circumstances, his use of deadly force was constitutional

as a matter of law.

## 1.    *Qualified Immunity*

Under the qualified immunity doctrine, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citation omitted). Once a defendant raises the qualified immunity defense, the plaintiff bears the "burden of convincing the court that the law was clearly established." *Pueblo Neighborhood Health Centers, Inc. v. Losavio*, 847 F.2d 642, 645 (10th Cir. 1988). To do so, the plaintiff "must do more than identify in the abstract a clearly established right and allege that the defendant has violated it." *Id.* In order for pre-existing law to be clearly established, there must ordinarily "be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Medina v. City and County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992) (citation omitted), *holding limited on other grounds by Hinton v. City of Elwood*, 997 F.2d 774 (10th Cir. 1993). The question of whether a plaintiff has invoked "clearly established law" is a question of law which the district court must decide. *Losavio*, 847 F.2d at 646.

"While qualified immunity is a powerful defense in other contexts, in excessive force cases the substantive inquiry that decides whether the force exerted by police was so excessive that it violated the Fourth Amendment is the same inquiry that decides whether the qualified immunity defense is available to the government actor." *Quezada v. County of Bernalillo*, 944 F.2d 710, 718 (10th Cir. 1991). Under a qualified immunity analysis, a court must determine

whether any "reasonable government official acting in the same place and under the same circumstances would have believed his actions were legal." *Id*. The substantive inquiry into an excessive force claim requires the factfinder to determine whether the use of force was objectively reasonable. *See id*; *Graham v. Connor*, 490 U.S. 386, 394 (1989). The factors to be used in determining whether the force used by an officer was reasonable include the severity of the crime at issue, whether the subject poses an immediate threat to the safety of the officer, and whether the subject is resisting arrest. *Graham*, 490 U.S. at 396. "Thus, given the common focus on reasonableness and the clearly established unlawfulness of excessive force, the qualified immunity and excessive force analysis do not differ in any significant respect." *Diaz*, 924 F. Supp. at 1093.

Plaintiff's arguments regarding Officer Bode's § 1983 liability for alleged Fourth Amendment violations can be separated into two issues--Officer Bode's pre-seizure conduct and his conduct regarding the seizure itself.

### 2. *Pre-seizure conduct*

Citing to the district court opinion in *Quezada*, 944 F.2d 710, Plaintiff contends that

Officer Bode's negligent pre-seizure conduct violated Mr. Nicolds' Fourth Amendment rights.[3]

(Resp. at 31.)  Plaintiff specifically argues that, assuming Mr. Nicolds did have a gun, Officer

Bode "voluntarily and recklessly, negligently, or with gross negligence" placed himself in a

"perilous position," (Resp. at 31), by failing to announce himself as an APD officer as standard

police procedure required him to do, by failing to "take cover" by standing to the side of the

doorway when he originally approached Mr. Nicolds' home, and by failing to take cover and

---

[3] Officer Bode apparently accepts that an officer's pre-seizure conduct that is immediately connected to a suspect's threatened use of force is the proper subject of a Fourth Amendment excessive force inquiry.  (Memo. at 9.)  Some Tenth Circuit law suggests that an officer's pre-seizure conduct is not subject to Fourth Amendment scrutiny in an excessive force case.  *See Wilson v. Meeks*, 52 F.3d 1547, 1554 (10th Cir. 1995) (citing cases from other circuits for the proposition that an excessive force inquiry should be confined to "whether the officer was in danger at the moment of the threat"); *Romero v. Bd. of County Commissioners*, 60 F.3d 702, 704 (10th Cir. 1995) (stating that the reasonableness inquiry is confined to whether the officer was in danger at the moment of the threat) (citing *Wilson*, 52 F.3d at 704), *cert. denied*, 516 U.S. 1063 (1996).  Defendants have not made this argument.  Even if they had, however, a review of Tenth Circuit law suggests that the current law in the circuit is that an officer's pre-seizure conduct that is "immediately connected" to the need to use excessive force is relevant in a Fourth Amendment excessive force analysis.  *See Romero*, 60 F.3d at 705 n. 5 ("We recognize that an officer's conduct prior to the suspect's threat of force may be relevant to the reasonableness inquiry if the conduct is 'immediately connected' to the suspect's threat of force . . .") (citing *Bella v. Chamberlain*, 24 F.3d 1251, 1256 n. 6 (10th Cir. 1994), *cert. denied*, 513 U.S.1109 (1995)); *Sevier v. City of Lawrence*, 60 F.3d 695, 699 (10th Cir. 1995) (citing *Bella* for the proposition that events immediately connected to a seizure should be taken into account when determining whether the seizure was reasonable); *Allen v. Muskogee*, 119 F.3d 837, 840 (10th Cir. 1997) ("The excessive force inquiry includes not only the officers' actions at the moment that the threat was presented, but also may include their actions in the moments leading up to the suspect's threat of force.") (citing *Sevier,* 60 F.3d at 699), *cert. denied*, 522 U.S. 1148 (1998).  In this case, only a few seconds elapsed from the time Officer Bode approached Mr. Nicolds' front door to the time that Officer Bode shot Mr. Nicolds.  Under these circumstances, it is beyond dispute that Officer Bode's pre-seizure conduct was so "immediately connected" to Mr. Nicolds' alleged threat of force that it should be considered as part of the reasonableness inquiry.  *See Allen*, 119 F.3d at 841 (noting that ninety seconds had elapsed between the officers' arrival at the scene and the shooting of the suspect and stating, "[c]learly, the officers' preceding actions were so 'immediately connected' to Mr. Allen's threat of force that they should be included in the reasonableness inquiry.").

identify himself as an officer after Mr. Nicolds approached the door with a weapon. (Resp. at 31-34.) Plaintiff further argues that by placing himself in this "position of peril," Officer Bode created the situation that required the use of deadly force.

To the extent Plaintiff argues that violations of standard police operating procedures give rise to § 1983 liability, that argument is meritless. The Tenth Circuit has stated, "violation of a police department regulation is insufficient for liability under section 1983." *Wilson*, 52 F.3d at 1554 (citation omitted); *see also Romero*, 60 F.3d at 705 ("violations of state law and police procedure generally do not give rise to a § 1983 claim") (citations omitted). Therefore, even if Officer Bode's pre-seizure conduct violated APD regulations, the failure to follow the regulations, standing alone, does not give rise to liability under § 1983.

Although Plaintiff argues that Officer Bode's alleged negligent or grossly negligent conduct creates liability under § 1983, that is not the law in the Tenth Circuit. *See Sevier v. City of Lawrence*, 60 F.3d 695 (10th Cir. 1995).[4] In *Sevier*, the plaintiffs filed a § 1983 excessive force claim against defendants arising from the death of their son. *See id*. The Tenth Circuit stated, "[m]ere negligent acts precipitating a confrontation would not, of course, be actionable under §1983." *Id*. at 699 n. 7 (citation omitted). The court also stated that "[t]he reasonableness of Defendants' actions depends both on whether the officers were in danger at the precise moment that they used force and on whether Defendants' own *reckless or deliberate* conduct during the seizure unreasonably created the need to use such force." *Id*. at 699 (citing *Bella v. Chamberlin*, 24 F.3d 1251, 1256 & n. 7 (10th Cir. 1994)) (footnote omitted and emphasis added). Finally, the Tenth Circuit reiterated that "[o]f course, if the preceding events are merely

---

[4] The Tenth Circuit issued its decision in *Sevier* on July 21, 1995.

negligent . . . then they are not to be considered in an excessive force case." *Id.* at n. 8 (citations omitted).

Plaintiff has not identified any evidence that Officer Bode's pre-seizure actions amounted to "reckless or deliberate conduct" that created the need to use deadly force. *See id.* At most, Officer Bode's failure to announce himself as an APD officer and his initial failure to take cover when Mr. Nicolds approached the door constituted negligence.[5] Because the law was clearly established by September 16, 1995 that officers were not liable under § 1983 for negligent pre-seizure conduct, Officer Bode is entitled to qualified immunity regarding Plaintiff's claims that Officer Bode's negligent pre-seizure conduct generated the need for him to use excessive force.

### 3. The Seizure

Plaintiff argues that the following evidence is sufficient to allow a reasonable jury to infer that Mr. Nicolds was unarmed when Officer Bode shot him, that Officers Bode, Robertson and Ryan planted the gun found by Mr. Nicolds' body, and that Officer Bode therefore used excessive force when he shot Mr. Nicolds: 1.) inconsistencies in the officers' statements about the position of the gun in relation to Mr. Nicolds' body; 2.) inconsistencies in the officers' statements about who picked up the gun after they entered the house; 3.) that the gun found by Mr. Nicolds' body was not the weapon in his home that he normally used for self-protection; 4.) that Officers Bode, Ryan, and Robertson had been trained never to touch "the most important piece of evidence at a crime scene," yet they admit to having handled the gun; 5.) that although the revolver found by Mr. Nicolds' body was cocked, the revolver did not need to be cocked in order to be fired; and

---

[5] At the April 12, 1999 hearing, I ruled that Officer Bode did not trespass on Mr. Nicolds' property. (Tr. at 48.)

6.) Officers Robertson and Ryan had a motive to lie about the shooting based on "professional courtesy," in order to cover-up for Officer Bode.[6] (Tr. of September 2, 1999 hearing at 31-33.)

To support her claim that the gun found by Mr. Nicolds' body was not the weapon he used for self-protection, Plaintiff's response cites to the report of Plaintiff's expert, Michael Cosgrove. Although Mr. Cosgrove opined that the weapon found near Mr. Nicolds' body was not the weapon he used for self-protection, (Cosgrove report at 10, Ex. C to Resp.), I have already ruled that this opinion will not be admissible in evidence at trial. (February 8, 1999 Order.) Mr. Cosgrove's report also fails to cite to the deposition testimony or statement of any witness who would be able to testify at trial that the gun found by Mr. Nicolds' body was not the one he owned and kept for self-defense purposes. (Cosgrove report at 10, Ex. C.)

The exhibits attached to Plaintiff's response to Officer Bode's sixth motion for summary judgment do, however, support her claim that the gun found by Mr. Nicolds' body was not the one he owned and kept for self-defense purposes. According to Plaintiff's own testimony, Mr. Nicolds told her that the weapon he kept for protection was a .38 pistol--not the .22 that was found by his body. (D. Phillips Depo. at 70, unmarked Ex. H to Plaintiff's resp. to Officer Bode's sixth motion for summary judgment) While this evidence may not be admissible at trial, no apparent barrier exists to the admissibility of the testimony of Mr. Nicolds' roommate, Hugh L. Massey. Mr. Massey testified that he and Mr. Nicolds kept a .32 revolver in a desk drawer to use

---

[6] In Plaintiff's response, she also argues that "Mr. Nicolds' state of mind and his probable conduct as a result thereof are material facts to Ms. Phillip's claim of excessive force." (Resp. at 34.) However, the Tenth Circuit has clearly stated that the victim's state of mind or intentions are irrelevant to the reasonableness inquiry. *See Wilson*, 52 F.3d at 1553 ("[T]he inquiry here is not into Mr. Wilson's state of mind or intentions, but whether, from an objective viewpoint and taking all factors into consideration, Officer Meeks reasonably feared for his life.").

in case someone broke into their home. (Masssey Depo. at 41, Ex. I to Plaintiff's resp. to Officer

Bode's sixth motion for summary judgment.) Mr. Massey also testified that Mr. Nicolds showed

his .22 revolver "to everybody" and that "[i]t was part of his collection." *Id.* at 42. Regarding

the lack of a need to cock the .22 revolver found by Mr. Nicolds' body, I have already ruled that

Mr. Cosgrove's opinion on this subject would be admissible at trial. (February 8, 1999 Order at

2.)

Concerning Plaintiff's argument that Officers Robertson and Ryan had a motive to lie

based on professional courtesy, evidence in the record confirms that Officer Robertson

understood the term "professional courtesy" to mean "helping somebody out that you maybe you

know or trust," and that he believed that if one officer testified against another it "could make life

hard on the officer that is testifying." (Robertson Depo. at 114-15, Ex. G to Officer Bode's fifth

motion for summary judgment.) Officer Ryan acknowledged that tampering with evidence is a

felony and that an officer who did so would be fired. (Ryan Depo. at 122.) Evidence in the

record also supports Plaintiff's claim that officers are trained not to pick up or touch important

pieces of evidence, such as the gun in this case, (Cosgrove report at 13), although the officers

admit that at least one of them did so.

The evidence in the record also confirms Plaintiff's assertion that there are inconsistencies

in the officers' statements about the position of the gun in relation to Mr. Nicolds' body and who

picked up the gun. Officer Bode testified that when Mr. Nicolds was on the floor he rolled and

reached for the gun that was at his *waist*, (Bode Depo. at 132), while Officers Robertson and

Ryan stated that the gun was lying at Mr. Nicolds' *feet* when they first saw it, (Robertson Depo.

at 110; Ryan APD Statement at 3). Regarding who picked up the gun, the officers' testimony is

inconsistent about whether Officer Bode *and* Officer Robertson picked up the gun or whether only Officer Bode *or* Officer Robertson picked up the gun in an attempt to "clear" it. (Robertson Depo. at 107-10; Bode Depo. at 157; Ryan Depo. at 112.)[7]

To support her argument that this evidence is sufficient to create a genuine issue of material fact, Plaintiff cites to *Samples v. City of Atlanta*, 846 F.2d 1328 (11th Cir. 1988). In *Samples*, plaintiffs appealed the district court's grant of the defendants' motion for summary judgment on their § 1983 excessive force case arising out of the shooting death of their son. *Id*. The officer claimed that the following events occurred. He stopped at 4:30 a.m. to investigate a "demented person," who turned out to be plaintiffs' sixteen year-old son, the decedent, standing in a phone booth. *Id*. at 1331. When questioned by the officer, the decedent threw a soda bottle at the officer, pulled out a knife, began opening the knife, and approached the officer in a threatening manner. *Id*. Although the officer ordered him to drop the knife, the decedent continued to advance, and the officer shot him. *Id*. The shot missed. *Id*. The decedent became enraged and continued to try and harm the officer, so the officer continued shooting. *Id*.

On appeal, the Eleventh Circuit held that the district court had erred in granting the defendants' motion for summary judgment because the following evidence created a genuine issue of material fact: 1.) the knife found by the body was unopened, although that type of knife automatically shuts when opened at less than a forty degree angle; 2.) the knife was small, with

---

[7] A careful review of the record reveals other evidence that could support Plaintiff's theory of the case. Officer Robertson testified that he never heard the click of a slide or a hammer going back. (Robertson Depo. Pl. Ex. G at 87.) He also did not notice a set of keys lying by Mr. Nicolds' body, (Robertson Depo. Pl. Ex. G at 98), although a photo of the crime scene shows a set of keys lying on the kitchen floor in the vicinity of Mr. Nicolds' body. (Ex. 15, attached to Plaintiff's Response to Defendants' Motion for Summary Judgment No. 1.)

only a three inch blade, which could lead a fact finder to infer that even if the officer's version of events was truthful, the officer had used excessive force; 3.) the officer outweighed the decedent by almost a hundred pounds, which raised an inference that the officer was not in a life-threatening situation; and 4.) one of the bullets struck the decedent in the back. *Id*. at 1332.

In a case similar to *Samples*, the Eighth Circuit held that the district court erred when it granted the defendants' motion for judgment as a matter of law after the plaintiff had presented her § 1983 claim to a jury. *See Gardner v. Buerger*, 82 F.3d 248 (8th Cir. 1996). In *Gardner* the plaintiff brought suit after a deputy shot her husband in the back of the head and killed him. *See id*. The plaintiff's case rested on the following evidence: 1.) the deputy who shot her husband went into the home of plaintiff and her husband to serve a protection order and came out a few minutes later after having shot plaintiff's husband in the back of the head; 2.) the deputy had repeatedly threatened to shoot plaintiff's husband; 3.) plaintiff's husband never hit the deputy; 4.) plaintiff's husband never used or even had a weapon; and 5.) the plaintiff had told the deputy that there were guns in a safe in the house. *Id*. at 252. The Eighth Circuit agreed with the plaintiff that this evidence was sufficient to allow a reasonable jury to infer that the deputy used excessive force in killing her husband. *See id*.

Although the defendants claimed that the plaintiff was asking the jury to speculate about what happened to her husband, the court denied that this plaintiff was asking that. *See id*. The Eighth Circuit stated, "[j]ust as a party cannot defeat a motion for judgment as a matter of law with speculation alone, a party cannot win a motion for judgment by labelling [sic] as 'speculation' those reasonable inferences it would rather the jury not draw." *Id*. (citation omitted). In the court's view, the plaintiff "simply asked the jury to reason; that is, to draw the

not extraordinary inference" that the shooting of an unarmed man shot in the back of the head was unreasonable. *Id*. at 253.

Although *Samples* and *Gardner* are not binding precedent and the facts of those cases are not identical to the facts of this case,[8] they are persuasive. As in *Samples*, Plaintiff's evidence that Officer Bode shot an unarmed Mr. Nicolds and then, along with Officers Robertson and Ryan planted the .22 weapon by Mr. Nicolds' body, is based primarily on the reasonable inferences that can be drawn from inconsistencies in the evidence. Plaintiff's case also rests, however, on evidence that Mr. Nicolds did not keep the .22 weapon for self-defense purposes and that at least one officer picked up the gun by Mr. Nicolds' body although police are trained not to do that. Although Defendants would characterize Plaintiff's case as resting on rank speculation, "a party cannot win a motion for judgment by labeling as 'speculation' those reasonable inferences it would rather the jury not draw." *Gardner*, 82 F.2d at 252 (citations omitted). While Plaintiff "definitely presented a bare-bones case," *id*. at 252-53, Plaintiff did present some evidence regarding the "reasonableness of the shooting itself, even though she never introduced testimony describing the moment [Mr. Nicolds] was shot." *Id*. at 253 (footnote omitted).

Plaintiff's evidence is minimal, but it must be evaluated in the light most favorable to her. This case also turns, in large part, on the credibility of the officers. It would be inappropriate to evaluate the officers' credibility at this juncture in the proceedings. *See Hirase-Doi*, 61 F.3d at 785 n. 4. After carefully reviewing the record in the light most favorable to the Plaintiff, I find that the reasonable inferences that can be drawn from the evidence could lead a reasonable jury to

---

[8] The most obvious difference is that in this case, unlike *Gardner*, the parties dispute whether the victim was armed.

conclude that Mr. Nicolds did not pose a threat of serious physical harm at the time Officer Bode

shot him because Mr. Nicolds was unarmed.  *See Samples,* 846 F.2d 1328; *Gardner,* 82 F.3d 248.

Plaintiff contends that even if Mr. Nicolds was armed, Officer Bode used excessive force

when he shot at Mr. Nicolds as he lay wounded on the floor.  Although Officer Bode claims that

after Mr. Nicolds fell to the floor Mr. Nicolds reached for his gun, which was at his *waist*, Plaintiff

points out that Officers Robertson and Ryan stated that when they first saw the gun it was at Mr.

Nicolds' *feet*.  Plaintiff argues Mr. Nicolds could not have presented an immediate or imminent

threat of death or great bodily harm if his gun was down by his feet.  Plaintiff also argues that

"[i]n order for Officer Bode to have been justified in utilizing deadly force, Mr. Nicolds would

have had to take physical possession of the weapon and begin to bring that weapon at least

toward the direction of Officer Bode."  (Resp. at 19.)

The Tenth Circuit has already rejected Plaintiff's argument that an officer has probable

cause to believe a suspect poses a serious physical threat only when the officer has been

threatened with a gun.  *See Ryder v. City of Topeka*, 814 F.2d 1412, 1419 n. 16 (10th Cir. 1987).

In *Ryder* the Tenth Circuit stated:

> There  might be numerous situations that would justify a police
> officer's belief that a suspect was armed and that he posed an
> immediate threat to the officer, even though the suspect was not in
> fact armed.  Certainly, whether a suspect is armed is a relevant
> factor in determining whether the suspect poses an immediate
> danger.  A per se rule, however, that a police officer may never
> employ deadly force unless attacked by a suspect possessing a
> deadly weapon would place a police officer in a dangerous and
> unreasonable situation.  Therefore, we conclude that whether a
> particular seizure is reasonable is dependent on the "totality of the
> circumstances," *id*. at 9, 105 S.Ct. at 1700, and not simply on
> whether the suspect was actually armed.  *See Carter v. City of
> Chattanooga*, 803 F.2d 217 (6th Cir.1986).

Thus, the fact that Mr. Nicolds was not actually pointing the .22 revolver at Officer Bode when Officer Bode shot Mr. Nicolds as he lay on the floor is not dispositive of the question of whether Officer Bode used excessive force in shooting Mr. Nicolds after he fell to the floor.

As the Tenth Circuit stated in *Ryder*, "whether a particular seizure is reasonable is dependent on the 'totality of the circumstances.'" Based on the totality of the circumstances in this case, a reasonable jury could find that Officer Bode used excessive force when he shot Mr. Nicolds as he lay wounded on the floor.

**B.** **Motion for Summary Judgment No. VI--Dismissal of the NMSA 1978 § 41-4-12 Claims**

By this motion Officer Bode seeks dismissal of Plaintiff's claims against him brought under

the New Mexico Tort Claims Act ("NMTCA"), N.M. Stat. Ann. § 41-4-1, *et seq.*[9]  The

remaining NMTCA claims against Officer Bode appear to be for assault, battery, trespass, false

arrest/false imprisonment,[10] and use of excessive force in violation of the Fourth Amendment to

the United States Constitution and Article II, Section 10 of the New Mexico Constitution.[11]

---

[9] Section 41-4-2 of the NMTCA states in relevant part: "it is declared to be the public policy of New Mexico that governmental entities and public employees shall only be liable within the limitations of Tort Claims Act."  Section 41-4-12 states that immunity "does not apply to liability for personal injury, bodily injury, wrongful death or property damage resulting from assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, defamation of character, violation of property rights or deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico when caused by law enforcement officers while acting within the scope of their duties."

[10] At the September 2, 1999 hearing, counsel for Plaintiff stated that its false arrest/false imprisonment claims were being submitted under a single theory of recovery.  (Tr. at 43.)

[11] Although Defendants state in their brief that Plaintiff's state law claims are alleged in Plaintiff's amended complaint at paragraphs 145(a) & (c), paragraph 145 does not contain a section (a) and (c).  Moreover, paragraph 145 falls under Count III of Plaintiff's amended complaint, which is titled "Fourth and Fourteenth Amendment Civil Rights Violations."  It therefore appears that Defendants' motion for summary judgment is actually directed at Count I of Plaintiff's Amended Complaint, which is titled "Common Law Wrongful Death, Aggravated Battery and Battery, Aggravated Assault and Assault, Trespass, and False Arrest and False Imprisonment."  *See* Am. Compl. at ¶ 111 (alleging that the New Mexico Tort Claims Act waives immunities for the actions of Officer Bode); at ¶ 112(a)-(e) (alleging that Defendants violated Mr. Nicolds' rights, privileges and immunity secured by the United States and New Mexico constitutions by using excessive deadly force and committing battery, assault, trespass and false arrest/false imprisonment).

At the April 12, 1999 hearing, I ruled that Plaintiff's trespass claim alleged against all of the Defendant officers should be dismissed with prejudice. (Tr. of April 12, 1999 hearing at 48.) Therefore, Plaintiff's trespass claim alleged against Officer Bode should be dismissed with prejudice.

As discussed earlier, this case has been complicated by the fact Plaintiff has proceeded under two contradictory factual theories: 1.) that Mr. Nicolds never had a gun; and 2.) that Mr. Nicolds had a gun, but Officer Bode is nevertheless liable under the NMTCA for Mr. Nicolds' death because his negligent conduct created the situation in which he was compelled to use deadly force. For the reasons set forth in the discussion of Defendants' fifth motion for partial summary judgment, I have concluded that there is a genuine issue of material fact regarding whether Mr. Nicolds had a gun. This finding gives rise to a genuine issue of fact regarding whether Officer Bode is liable under the NMTCA for the use of excessive force in violation of the New Mexico and United States Constitutions and for the intentional torts of battery, assault, and false arrest/false imprisonment.

The more difficult issue raised by the parties' briefs, however, is whether Plaintiff can recover under the NMTCA for Officer Bode's alleged negligence leading up to his use of deadly force. Plaintiff claims that "even taking the statements of the officers as true, that Mr. Nicolds carried a weapon to the door of his residence, defendant Bode voluntarily and recklessly, negligently, or with gross negligence placed himself in a position of peril where he had no choice other than to use deadly force." (Resp. at 13.) Plaintiff further argues that the reason why Officer Bode allegedly committed assault and battery resulting in Mr. Nicolds' death is "immaterial because of Bode's negligence that created the need to use deadly force." (Resp. at 17.)

Officer Bode admits that New Mexico case law establishes that an officer's negligence that enables a third party to commit an enumerated tort gives rise to liability under the NMTCA. Officer Bode also concedes that a supervisor's negligence that results in an officer committing an enumerated tort gives rise to liability under the NMTCA. Officer Bode flatly denies, however, that the NMTCA waives immunity for an officer's own negligence that causes the officer to commit an enumerated tort. According to Officer Bode, it is impossible for an officer to negligently cause himself to commit an enumerated tort. The Tenth Circuit, however, seems to disagree. *See Quezada v. County of Bernalillo*, 944 F.2d 710 (10th Cir. 1991).

In *Quezada*, the plaintiff sought to recover damages under state and federal law after a deputy sheriff shot and killed the plaintiff's daughter. The events leading up to the daughter's death began when a deputy sheriff spotted the daughter sitting in a car behind a building. *Id*. at 712. The deputy sheriff began talking with the daughter. *Id*. Another deputy sheriff, Deputy Sauser, soon arrived at the scene. *Id*. Although the deputies tried to convince the daughter to roll down her car window, she refused to do so. *Id*. The deputies observed the daughter pick up a pistol and load it. *Id*. A third deputy sheriff arrived at the scene. *Id*. Although two of the deputy sheriffs took cover, Deputy Sauser remained just a few feet away from the vehicle, even after it became clear that the daughter was suicidal and she had began to point her gun in Deputy Sauser's general direction. *Id*. at 713. When the daughter pointed her gun at Deputy Sauser, he shot at her three times. *Id*. Two of the bullets hit and mortally wounded her. *Id*.

Following a non-jury trial the trial court entered judgment in the plaintiff's favor and against Deputy Sauser on plaintiff's federal civil rights claim. *Id*. The plaintiff's state law claim "charged all the Defendants with wrongful death due to negligence and assault, battery and abuse

of process." *Id.* The Tenth Circuit noted that "the district court said Deputy Sauser voluntarily and negligently placed himself in a position of peril where he had no choice other than to use deadly force," that Deputy Sauser's " negligence was the proximate cause of [plaintiff's daughter's] death," and that "but for his negligence, deadly force would not have been required." *Id.*[12] Based on these findings, the trial court "ruled against Sauser under the New Mexico Tort Claims Act." *Id.* The trial court entered judgment in the plaintiff's favor and against Deputy Sauser, the sheriff, and the county on Plaintiff's state wrongful death claim. *Id.*

On appeal, Defendants raised six arguments, none of which directly challenged the finding that Deputy Sauser was liable under the New Mexico Tort Claims Act. *See id.* at 714 (stating six

---

[12] The trial court's findings of fact and conclusions of law in *Quezada v. County of Bernalillo*, Civ. No. 88-0110 JB (D.N.M. October 20, 1989) read in relevant part:

20. By his voluntarily placing himself in a position of peril, Defendant Sauser deprived himself of any choices other than the use of deadly force; that by his disregard for his own safety, he forced a deadly confrontation which left him no option other than to use deadly force.

21. Dr. Parsons, Plaintiff's expert, established that with a potential suicide, one must stabilize the situation and then establish dialogue from a position of cover; that Defendant Sauser placed himself in a position of great jeopardy, thereby solely creating the danger.

22. By negligently placing himself in a position of jeopardy, Defendant Sauser prevented stability so that communication could not take place; that his actions left absolutely no room for error.

. . . .

38. The negligence of Defendant Sauser was a proximate cause of the death of Berlinda Griego.

. . . .

3. Defendant Sauser is liable to Plaintiff under the New Mexico Tort Claims Act, 41-4-1 et seq. NMSA 1978, for the wrongful death of Berlinda Griego.

issues raised on appeal).  In a footnote, however, the Tenth Circuit stated:

> [W]e note that we read the district court's findings in this case as indicating Deputy Sauser committed a battery on Ms. Griego.  The fact that Deputy Sauser did not subjectively intend to harm Ms. Griego is immaterial because under New Mexico law if " 'the basis of an action is assault and battery, the intention with which the injury was done is immaterial * * * provided the [intentional] act causing the injury was wrongful * * *.' "  *California First Bank v. New Mexico*, 111 N.M. 64, 74 n. 6, 801 P.2d 646, 656 n. 6 (1990) (quoting *Keel v. Hainline*, 331 P.2d 397, 399 (Okla.1958)).  *The district court findings indicate Deputy Sauser's actions were negligent, and therefore wrongful.  Thus, Deputy Sauser's actions qualify as a battery for purposes of the Tort Claims Act.  See* N.M.Stat.Ann. § 41-4-12 (1989 Repl.Pamp.).

*Id*. at 720 n. 5.  Thus, although the Tenth Circuit did not specifically decide the issue, the court acknowledged that an officer's negligent actions could qualify as a battery for purposes of the New Mexico Tort Claims Act.  The court also noted that under New Mexico law, the intent with which an officer commits assault and battery is immaterial as long as the assault and battery were wrongful.

While Defendants claimed at the September 2, 1999 hearing that *Quezada* was not "good law," they have not identified any case explicitly overturning or reversing it.  Thus, it appears that a plaintiff can recover under the NMTCA for an officer's negligent actions that cause that officer to commit an intentional tort.  This conclusion would seem to comport with established law that the NMTCA waives immunity for an officer's negligence that allowed a third party to commit an enumerated tort.  It would be illogical to interpret the NMTCA as allowing plaintiffs to recover for an officer's negligence when the plaintiffs were injured by the resulting intentional tort of a third party, but to prevent plaintiffs from recovering when they were injured by an officer's intentional tort caused by the officer's own negligence.

I am also satisfied that Plaintiff has submitted admissible evidence that might lead a reasonable jury to conclude that Officer Bode's actions leading up to the shooting were negligent. Although Officer Bode claims he announced himself as an APD officer, neither Mr. Johnson nor Officer Robertson recall him doing that.  Officer Bode also testified that if he had not identified himself as an APD officer, this failure would constitute a violation of APD standard operating procedures.  (Bode Depo. at 114.)  Officer Bode also admitted that he was standing in front of Mr. Nicolds' front door more than he should have been.  *Id.* at 116.  Plaintiff's expert, Michael Cosgrove, opined in his expert report it is standard police practice and procedure to announce one's presence when investigating an accident of the kind that occurred here and that Officer Bode's failure to identify himself as an officer was unreasonable, grossly negligent, reckless, and willful.  (Cosgrove report at 13.)  Mr. Cosgrove further opined that Officer Bode should have followed his reasonable police training and stayed to one side of the door when he approached Mr. Nicolds' house.  *Id.*  Based on this evidence, a reasonable jury could conclude that although Mr. Nicolds had a gun, Officer Bode's negligent and wrongful pre-shooting actions created the situation in which he was compelled to commit enumerated torts under the NMTCA.

IT IS THEREFORE ORDERED that  Officer Bode's Motion for Summary Judgment No. V

(Doc. No. 171) and Motion for Summary Judgment No. VI (Doc. No. 182) are DENIED.

_____
UNITED STATES DISTRICT COURT JUDGE